Thank you for your patience. We've got one case left this morning, Caraway v. Town of Columbus. When you're ready. Thank you, Your Honor. Michael Sansousi, appearing on the night circuit. I'm sorry, Judge Callahan. I used to be a justice, though. I think Judge Christian did, too, so then we got bumped back. But, well, maybe I'll just jump right to that, since you don't have a lot of time, that, okay, Officer Caraway, I think, is claiming a constitutional right to due process, not just the availability of post-termination procedures, but also specific notice of the availability of those procedures. So I'm wondering what the best authority for that is. But then, after you get there, it appears, though, that even after he found out about it, he never sought review by the police commission, and I'm not sure why, because I couldn't find that there was a statute of limitations in doing that. It seemed like then he just jumped to federal court. That is correct, Your Honor. The basic premise of that particular claim is, number one, does the government entity have any obligation to impart notice of a person's right? And there's kind of two related issues here. Not only the right to a post-termination hearing in the context of the police commission proceeding, but also, more specifically, his right to a name-clearing hearing. And so there's really two claims there involving whether or not there was a right to notice of either or both of those. Is it really two different hearings? Aren't they the same thing? I read this as, I kept trying to figure out what your theory is. These are two 1983 claims that are both procedural due process. They both go to lack of notice of the post-termination hearing, one for a liberty interest and one for a property interest, reputation and job. But isn't it the same hearing? Well, it could be. In this case, I think I referred to it at one point of the perhaps killing two birds with one stone. And one of the issues here, just if I could maybe address that initially so I don't get myself too entangled, is I think there's a, even putting aside the issue of the right to, whether there might be a right to notice of a post-termination hearing, per se, to challenge the termination decision itself, be it before the police commission or otherwise, that's really legally distinct. According to all the cases, it's legally distinct from an individual's right to a post-termination name-clearing hearing. Well, I grant you that. But I'm going back to Judge, this is just my way of getting back, I suspect it would be the same vehicle. He had the option of pursuing that. And to Judge Callahan's point, I think he still does. I don't know how we would find a denial of due process where he's got this available to him, I think, today. Well, but I think there's the primary issue that we were focusing on is the cases suggest that it should be offered at a meaningful or opportune time. And in the context of this case, when I got aboard, it was six months after the fact. That's not that far. That's not that far out. I mean, and I looked up your town, and it's like boomed up to 2028, 2,028 people. It's a pretty little place, right? I think there might be more than that now. Oh, I don't know. That was 2016, I guess. The police commission where this hearing would happen, is it right in this town? It's a small community, right? To Judge Callahan's point. So in terms of name-clearing, it seems that the hearing of this type would be big news. Right. Why would it be insufficient? Why is it insufficient to clear his name? That's what Judge Callahan's really asking, and I share the concern. Well, and the point of our argument, Your Honor, is the fact that, as Mr. Carraway testified, six months after the fact, in other words, if he would have been notified at or about the time of his termination, it certainly might have been a more meaningful opportunity for him. But given all the adverse publicity that was filtering out, including that coming from the town based, as we pointed out, a lot of it on largely inaccurate information, I think it raises an issue as to whether that would be considered a meaningful opportune time, and in particular, with respect to the right to a name-clearing hearing. And that's why you think the process would be inadequate, essentially. Well, yeah, and as Sergeant Carraway testified, and I think I quoted an excerpt from that when Mr. Tuning had cross-examined him, he said, you know, six months after the fact, with all of the adverb publicity that's gone in the papers, it's all over the Internet, he said, I've basically been ruined, and it seems like it would have made more sense had I been given the opportunity at an earlier rather than later time. And that's why I raised the question. I know the cases are not really clear, but when, if any, is there an obligation on the part of the government employer to notify somebody of their right to these types of hearings? Well, if I agree with you that they should notify people, you know, that people are generally representing themselves and, you know, and particularly a lot of government. And in many, I don't know that it's the case here, but in a lot of, if you're an employee of a government, a lot of times you have to exhaust your remedies before you can even come and file a court action. But here, it, so they didn't tell him, that's basically, and let's say I agree with you that they should at least hand him something after they take an adverse action and say, this is what you can do, sign this, acknowledge it, and do all of that. But he does find out in six months, six months now how long, you know, that, I mean, I don't know how he can, you know, what are we supposed to do in name clearing here? Or that's, we're just? Well, I think the issue becomes whether he was entitled to notice and an opportunity to litigate that at a reasonable or opportune time. And I think the issue of what might be a reasonable opportune time is. But he didn't lose the right. He didn't lose the right. We know that. Right. So then did he waive it? And then if he waived it, what do we do? Well, I don't think the, I think the argument is stronger, and admittedly so, as it pertains to the right to receive notice of a name clearing hearing. And as we pointed out and relied largely on the Buxton decision, which. That's from a jurisdiction where there wasn't the same confidentiality law as there is in Montana. So there's, it was foreseeable there would be access to the result. So here, why is there, why is that case? It's not controlling, but I'm not even sure it's helpful. Okay. Well, I think it clearly indicates that notice should be required and that the government employer should give notice of the opportunity. Well, but why, sir? Because in Montana, there's a presumption that that personnel file is going to be confidential. Right. That seems to me a huge distinguishing factor between your case and Buxton. That is a distinguishing factor, Your Honor. Could I ask you just quickly, it seems to me on your due process claim that your briefing suggested that the mayor, mayor's correspondence, I can give you the date of the letter, but at any rate, you know which one I mean. It's right here. The gist of the argument is that the mayor's correspondence on November 6th suggested that this was actually the termination. Not only that he didn't affirmatively inform your client of a post-termination or name clearing hearing, but that he stated quite affirmatively that this was the end of the process. And I do not see that in the mayor's letter. So am I looking at the wrong letter or where is it? He indicated that this was the final decision. And is it your contention that, are you relying on the text of the letter or are you indicating that the mayor said those words? Yeah. No, I believe it's in one of the letters and it's, if I'm not mistaken, I think it was in the termination letter. Okay. Well, maybe when you come back up, you could, I don't see it in the letter, so. Okay. And I'm not sure if we're looking at the November 6th pre-termination letter. Well, you can, you'll have a chance when you're seated. I just want to give you fair notice that I don't see it. I will look that up. Okay. So why don't we hear from the other side and then we'll give you some time to respond. All right. That would be fine. And do I have any time left? We'll put a little more time on the clock. Okay. And the other issue, of course, that I wanted to point to is the wrongful termination claim that was also dismissed. And I think there's clearly triable issues surrounding that. Is your client a member of a union? No. Okay. Your time has now expired. Let's hear from the other side and then we'll give you a chance to respond. May it please the court. My name is Adam Tuning. I'm here on behalf of the City of Columbus. Good morning. Good morning. Mayor Gary Wolterman and retired police chief Bill Pronovost. Of course, we feel the district court got it right. Well, do you concede that Officer Carraway had a constitutional right to some post-termination procedure? Your Honor, we did not concede. We did not concede at the lower court that he had a property interest in his position. But we also didn't argue that he didn't. And so certainly the way this is framed before the court, he was entitled to post-termination, pre-termination and post-termination procedure. So why doesn't he have a right to some notice of that? I mean, how hard is that? After you fire someone, just give them a sheet of paper and say that this is what it is, sign it. And I mean... This is certainly one of those cases and they come across this in our career where it's just like, shoot, if the client would have just put one line in the letter, this would be an open and shut deal. That's absolutely correct. At the same time, there's no supporting case law that says it's constitutionally required. Well, can he go back and have these hearings now? Is there any reason he can't have them now? I don't see one, Your Honor. Well, I mean, okay, if he goes back and asks for them, are you going to claim there's a statute of limitations? Well, so... Okay, I'm asking you right now because then if he goes back and does that, that there'll be a recording of oral argument and say, well, the lawyer said that he could just go back and have that right now. And the interesting thing of what the Montana legislature did here is they created almost kind of an independent appeal process. Because in this case, of course, the... We know that, but Judge Callahan's asking whether he could request this hearing now. And so my answer would be up to the police. And you won't say, oh, well, no, no, no, no. So they could claim statute of limitations? Where is the statute of limitations? I hope they wouldn't. It's not in there. I think he absolutely has a right to bring that name-clearing hearing now. I think one of the questions he poses is... Well, and what about challenging his termination, too? There's post-termination... There's no statute of limitations to bring that challenge to the police commission. When he talks about... But it wouldn't be... But it would be a full hearing on the merits. Correct. It would be a full discussion of the episodes that were covered in the transcript of his interview. Correct. So, yeah, I think it would be a two birds with one stone. It would address both of the things. And I think that brings us to a point I think the judges were asking about was, when's the meaningful time? And in Mr. Carraway's deposition, he said, well, it's not meaningful. They've already hired someone to replace me, so it's not meaningful. And I think while the practicality of whether a small police force can, you know, bring someone else on or someone else have to get fired... If he won, they'd have to reinstate him, wouldn't they? Correct. Or pay him. Or pay him. And besides, it seems to me he would still be able to vindicate his name. There's still the name-clearing aspect of it. And that was my point, is I don't think it's ever too late to clear your name. Right, so he could do that. What about this statutory claim that he brings? He's not a member of a union, so I think the statute applies. Is that right? Yes, correct, Your Honor. In Montana, the Montana Wrongful Discharge Act prohibits wrongful discharge. It's got two kind of main parts. One is you can't terminate someone without good cause, and you can't terminate someone. A discharge is wrongful if it violates the express provisions of a personnel policy. Right, and so he says that the policy, a policy, was violated here, I think because not everybody was present at the interview. The mayor was not present as his contention and was supposed to be. That's absolutely his argument, and I think there's a lot of case law, both from Montana's federal district courts as well as Montana's Supreme Court, that point out that the language says it's got to be a violation of the express language in the personnel policy. And what happens a lot of times in these cases is you get a claimant that says, well, you know, maybe this would have been a little bit better, and this was a little unfair, and I would have liked this to have happened. But if it's not expressly in there, they can't rely on it as a wrongful discharge claim. And so what Judge Cavan correctly pointed out is the express language of the personnel policies say no such thing as far as the mayor has to be sitting in the room. In fact, you know, when they're read more broadly, it says the mayor can task supervisors to supervise the process, and of course, you know, the mayor's tasked with more general oversight. The chief was more directly involved with what was going on here, and so he was tasked with conducting the initial interview, and the mayor was involved in the further investigation and the final determination process. Well, is this, but you know, but obviously, you know, we don't really condone sham proceedings in terms of if it's like everyone knows what's going to happen, and everyone's talked about it in town, and then it just, you know, it's a fait accompli. And I understood you somewhere for someone to make the argument, they said, oh, well, it's in the statutes. We expect people to read the statutes. Is that, so that's notice? Well, I think we're talking two different issues, I guess, as far as the pre-termination procedure and whether it was a sham. I don't think it was a sham. I think Chief Pronovost on the record is saying he was initially supportive of retaining Carraway, and that when the more determined that they had no choice but to terminate it. So I don't think it was a sham. I think, you know, it started the day after his, the criminal investigation ended, and it lasted, I think, almost two months. So I think they carefully reviewed it. There's a detailed record, so I don't think there was any sham. And then as far as the post-termination process, again, it's an independent thing that takes it away from the mayor. So if you're upset with the mayor and the chief, and you think that he's... Where did the mayor say this is it? That's, I think, Judge Callahan's point is one that's bugging me. I can answer that question, Judge Creshton. I noticed when you asked it. The mayor's two letters, the pre-termination and post-termination letter, never expressly said that this was the final step. You're done. You can't go any further. In the grievance policy, which was referenced in the pre-termination letter, there's reference that this is the end of the grievance period underneath the personnel policies. But again, the way the statutes are set up, it then kind of takes that power away from the mayor in the grievance policy and puts it in the hands of an independent three-person committee that can then review the mayor's actions. So it's not in the personnel policies. It's a separate statutory relief procedure that really gives employees a great recourse if they feel that the decision makers at the mayor and supervisor level couldn't be objective. I think we understand that, but we're asking a slightly different question, counsel. This is a statutorily guaranteed right, and the question, I think, is whether he's entitled to affirmative notice, as opposed to being on, that we assume people know what the law provides. And so, to Judge Callahan's point, why not hand him the notice, and you have said that that would have been nice had they done that. The question is whether they're And it seems to me that the strongest argument that the other team made was that there was an implication that the mayor's communications actually misled him, misled the plaintiff into thinking this is it. And then I think he may have been able to get some traction, but I don't see that in the letters. And I'm wondering if I've, the representation in the blue brief is quite affirmative, but there was this statement by the mayor, and I can't miss it. I think what opposing Mr. Sansucci was referring to was the language in the personnel policy. So it was never expressly said in the letters, this is it, this is your final chance. So we don't believe that he was misled by those letters in any way, that he didn't have some kind of recourse. Okay, so you think the blue brief, on its best day, should have cited to a personnel policy, and that's the confusion? The first pre-termination letter cited to the personnel policies. In those personnel policies, there's a line that, could say this is the last. Okay, that I've read. All right, so now I know where we're at. Okay, thank you. And yeah, so getting back to your question, as far as, you know, the affirmative notice, I think both parties did a good job citing what was out there as far as case law. I think each one of those cases could be read independently, you know, has its own facts, its own law, and things like that. And you can go back and forth, but I think Judge Cavan maybe summed it up best when he simply said that, you know, affirmative notice was not required under Montana law, and so therefore, it's plaintiff's burden to prove that it's constitutionally required, and that support just doesn't exist out there. Instead, the, you know, leading cases on this issue seem to say that what the courts are tasked with doing is looking at the administrative procedures, the statutes, to see if there's an adequate procedure available. In this case, there's no dispute that there was. These statutes are pretty neat, frankly, in providing an evidence. You know, whatever they say is by law. The mayor has to order it and make it happen. Both parties can appeal to the district court. So there's a lot of relief that's available there in those statutes that was available to Mr. Caraway, and he simply chose to avoid it in this case. So if you lose the police commission that you go to after the mayor, who are those people? The police commission? Yes. The police commission is three individuals, and I think there only requirement is that they can vote in the city. So how do they, do they just select people at random, or? They're appointed by the mayor. So how independent is that? It's three. The mayor. They're appointed prior to, I mean, they would be appointed prior to, you know, a specific hearing. But they're not a, this is a community of a couple thousand people, so this isn't a standing entity. Does the mayor appoint them in anticipation of a requested hearing, or is that a standing body that isn't? No, in this case there's some evidence that the police commission might help with hiring decisions. So they have other duties? So they have other duties. Not a lot, frankly, Your Honor. Okay. And they don't meet regularly, I think. Can they serve more than one term? I don't know the internal operating procedures of the police commission. I don't know that, Your Honor. Okay. I think it's telling me I'm out of time, if the judges have any other questions. Any further questions? Thank you very much. If you would put two minutes on the clock, please. One of the things that I did want to focus back on and not lose sight of is the other claim that we have under state law for the wrongful discharge personnel policy. That claim in particular, in terms of there being a triable issue on that, I think the, we quoted the section specifically, I think it's very, very clear that there's a triable issue there in terms of the proper interpretation of that. We had the former police chief himself acknowledging under oath that the mayor was to have been involved in that pre-termination interview, disciplinary interview process. Your client's position that he was prejudiced by the mayor just reading the transcript, or what is your client's position? Well, the mayor, it was more than that, Your Honor. The mayor admitted under questioning that he never even read any of the evidence that my client submitted in connection with his grievance. But I'm talking about absence from the hearing, from the interview. Yeah. And that interview was transcribed. Did the mayor say he didn't read the transcription of the interview? He didn't. He didn't. He relied, he said, I just relied on the police chief. I appointed him, and I let him take care of everything. That's basically what he said in a nutshell. And I think the policy clearly, clearly states that he was to have been involved in that as well. And the judge's interpretation of that particular section, if you read it, as I tried to point out in my brief, I think it suggests the opposite of what the judge says in terms of his interpretation. What about opposing counsel's argument, which is that ambiguity is enough because Montana law requires an express provision of personnel policy. Is he right on the law? Well, it requires that it be an express provision, but I would submit that this provision is express. It very clearly states that he was to have been involved in that. I tried to analogize that. It's like a buffer. He's supposed to be involved in that. It's like a check and a balance. He admittedly didn't participate. And then went even further when I asked him, and I have, and he admitted he never read any of that, that he just signed the letter that was prepared for him. So even his pre-termination letter, which was, I believe, the November 6th letter, Your Honor, stated he represented, I will be involved in this process, and I'm going to be involved in this process and review it. And he never did anything. And the policy clearly states he was to have been involved. Okay. Your time is up, if you would like to sum up, if you have a word or two. I would sum up by saying that I think that even if it isn't clearly established, I'm asking this Court, another first impression, perhaps, to indicate that a government employer should have some sort of obligation to impart notice of these types of post-termination procedures, be it the termination decision itself and or, in this case, a name clearing, that there should be some kind of obligation to that. And also, more particularly, I think, despite all of the due personnel policy claim. Okay. Thank you. Thank you very much for that argument. Carraway v. Town of Columbus submitted for decision. That concludes our proceedings for this morning, and I would like to say today was the first day that our Courtroom Deputy handled the tasks solo, and you did a flawless job. Thank you. Thank you.
judges: W. Fletcher, Callahan, Christen